HUDSON, Judge.
At the 18 November 2003 Criminal Session of the Superior Court in Randolph County, defendant Stephen Guy Michaelis appeared pursuant to indictments for two counts of indecent liberties with a child and one count of first degree rape. A jury found defendant guilty of one count of indecent liberties with a child, and the court sentenced him to 16-20 months in prison. Defendant appeals. For the reasons discussed below, we find no error.
The evidence tended to show that, in 2000, when T.C. was nine years old and defendant was sixteen, their families were close friends, and defendant sometimes spent the night with T.C.'s family. On 17 June 2000, T.C. awoke in the night to find defendant, laying on top of her. T.C.'s shirt was off and defendant was rubbing her chest and putting his hands between her legs and his fingers into her vagina. The next morning, defendant told T.C. not to tell anyone. Several weeks later, defendant was again spending the night with T.C.'s family. After everyone went to bed, defendant came into T.C.'s room, laid on top of her, rubbed her chest and forced his penis inside her. Two days later, T.C. told her brother, age eleven at the time, about the assaults, but said nothing to anyone else until 11 March 2002, when she told her school guidance counselor following a D.A.R.E program about inappropriate touching. After the guidance counselor, Ms. Mary Tinker, notified social services and police, Dr. Angela Stanley examined T.C. and testified as an expert. Dr. Stanley testified that the condition of T.C.'s hymen was consistent with the events she had described.
Defendant denied the allegations and presented testimony that he was not in North Carolina on the dates of the alleged sexual assaults.
Defendant first argues that the court erred in denying his motion to replace juror nine because that juror had been a close friend of Ms. Tinker, a key witness. We disagree.
Ms. Tinker was the guidance counselor to whom T.C. first disclosed the sexual assaults. After juror nine sent the court a note indicating that she was acquainted with Ms. Tinker, the court cleared the courtroom and examined the juror regarding her relationship with Ms. Tinker. Juror nine stated that she had worked with Ms. Tinker in 1991 and had been friendly with her,although she had not seen Ms. Tinker since then. The juror also indicated that she was currently working in the same school as Ms. Tinker's husband, and often spoke with him in passing. Defendant then moved to replace juror nine, which motion the court denied.
The decision to replace a juror is within the sound discretion of the trial court, and we review the denial of defendant's motion for abuse of discretion. State v. Tirado, 358 N.C. 551, 586, 599 S.E.2d 515, 539 (2004). "An abuse of discretion occurs where the trial judge's determination is manifestly unsupported by reason and is so arbitrary that it could not have been the result of a reasoned decision." State v. Reed, 355 N.C. 150, 155, 558 S.E.2d 167, 171 (2002) (internal quotation marks omitted). Here, the court examined the juror's relationship with Ms. Tinker, and determined that despite having some acquaintance with the witness, juror nine did not need to be replaced. There is nothing in the record to suggest the court's decision was "manifestly unsupported by reason and is so arbitrary that it could not have been the result of a reasoned decision," and we overrule this assignment of error.
Defendant next argues that the court erred in overruling defendant's objection to allowing T.C.'s brother to speculate regarding what T.C. might have told him about the assault. We disagree.
J.C., T.C.'s brother, testified about what T.C. told him about the sexual assaults. Defendant objected when J.C. speculated that T.C. had not finished telling him what had happened, and the court sustained that objection. J.C. then continued his testimony as follows:
A: (continuing) I think I like cut her off in the middle of her-in the middle of her telling me this and she-because I was so shocked and I don't think she ever finished.
Q: So she never got the chance to tell you?
A: I'm not sure. She might have finished, but I think that night that I-I cut her off in the middle of the story, in the middle of her telling me this.
Defendant contends that this testimony was speculation which is barred under Rule 602 of the North Carolina Rules of Evidence. N.C. Gen. Stat. § 8C-1, Rule 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter.") "This rule is designed to prevent a witness from testifying to a fact about which he has no direct, personal knowledge." State v. Poag, 159 N.C. App. 312, 323, 583 S.E.2d 661, 669, disc. appeal dismissed, 357 N.C. 661, 590 S.E.2d 857 (2003). "[P]ersonal knowledge is not an absolute but may consist of what the witness thinks he knows from personal perception." Id. (quoting N.C. Gen. Stat. § 8C-1, Rule 602 (Commentary) (1999)). Further, in State v. Davis, this Court considered the following witness testimony about whether defendant entered a particular hotel room: "I presume because I heard ____" and "[s]aw him sh____ shut the door or whatever." 77 N.C. App. 68, 73, 334 S.E.2d 509, 512 (1985). We held that such statements "while reflecting either poor memory or indistinct perception, are nonetheless competent and admissible because they were rationally based on the firsthand observation of the witness, rather than mere speculation or conjecture." Id. J.C.'s statements here were similarly competent and admissible, reflecting J.C.'s firsthand observations of his sister during their conversation.
Defendant next argues that the court erred in allowing publication of T.C.'s statement which had been admitted only as corroborative evidence. We disagree.
A detective read into the record a statement made to him by T.C. for the purpose of corroborating T.C.'s prior testimony. The State then moved to publish the written statement to the jury, which the court allowed over defendant's objection. "Because the manner of the presentation of evidence is a matter resting primarily within the discretion of the trial judge, his control of the case will not be disturbed absent a manifest abuse of discretion." State v. Harris, 315 N.C. 556, 562, 340 S.E.2d 383, 387 (1986). In Harris, our Supreme Court held that a trial judge did not err when he had copies of impeaching out-of-court statements distributed to individual jurors instead of providing a single copy for the jurors to share. Noting that Harris had not established prejudice, the Court held that the judge acted "well within his discretion." Id. Likewise, here we do not see any error which amounts to manifest abuse of discretion in the publication of the corroborative statement. State v. Harrison, cited by defendant is clearly distinguishable, as prejudice is clear where the document published was a "copy of the arrest warrant [which] carried the officer's handwritten notation that in District Court the defendant had been found guilty of the same offense for which he was being tried" de novo. State v. Harrison, 67 N.C. App. 560, 561, 313 S.E.2d 268, 269 (1984).
Defendant next argues that the court erred in denying his motion to dismiss at the close of all evidence. He contends that, because the indictment charged defendant with taking indecent liberties with a minor on or about 17 June 2000, that date became an essential element of the crime charged. "Generally, the time listed in the indictment is not an essential element of the crime charged." State v. Custis, 162 N.C. App. 715, 717, 591 S.E.2d 895, 897 (2004)(internal citations and quotation marks omitted). "Furthermore, in child sexual abuse cases our Courts have adopted a policy of leniency with regard to differences in the dates alleged in the indictment and those proven at trial." Id. This Court has set forth the proper analysis for determining when a time variance is fatal in a child sexual abuse case:
Time variances do not always prejudice a defendant so as to require dismissal, even when an alibi is involved. Thus, a defendant suffers no prejudice when the allegations and proof substantially correspond; when [a] defendant presents alibi evidence relating to neither the date charged nor the date shown by the State's evidence; or when a defendant presents an alibi defense for both dates. However, when the defendant relies on the date set forth in the indictment and the evidence set forth by the State substantially varies to the prejudice of [the] defendant, the interests of justice and fair play require that [the] defendant's motion for dismissal be granted.
State v. Booth, 92 N.C. App. 729, 731, 376 S.E.2d 242, 244 (1989) (citations omitted)." In Booth, the State presented no evidence that charged offense occurred during the dates specified in the indictment. Id.
Here, in contrast, the State presented testimony from T.C. that the incident occurred on 17 June 2000 and testimony from T.C.'s mother that defendant spent that evening at T.C.'s home. Defendant concedes in his brief that the State presented this evidence, but argues that this evidence is insufficient when considered with defendant's alibi evidence. This contention goes to the weight of the evidence, which is not for us to review. "The trial court need not concern itself with the weight of the evidence." State v. Murphy, 342 N.C. 813, 819, 467 S.E.2d 428, 432 (1996) (internal citations omitted). The trial court need only determine "whether there is any evidence tending to prove guilt or which reasonably leads to this conclusion as a fairly logical and legitimate deduction. If so, it is for the jurors to decide whether the facts satisfy them beyond a reasonable doubt that the defendant is actually guilty." Id. (internal citation and quotation marks omitted) Here, the trial court concluded that there was such evidence, and we agree.
Finally, defendant argues that the court erred in denying his motion for a jury instruction regarding the date variances previously discussed. "[W]hen [jury] instructions, viewed in their entirety, present the law fairly and accurately to the jury, the instructions will be upheld." State v. Roache, 358 N.C. 243, 304,595 S.E.2d 381, 420 (2004). Defendant contends, based on the assignment of error discussed supra, that the date of the offense was an essential element of the crime charged, and that the court failed to make clear to the jury the importance of the date. The court gave an instruction on alibi testimony and then further charged:
So if you find from the evidence beyond a reasonable doubt that on or about 17 June 2000 the defendant willfully took an indecent liberty with [T.C.] for the purpose of arousing or gratifying sexual desire . . . it would be your duty to return a verdict of guilty to the charge of indecent liberties with a minor on or about June 17th of 2000.
This instruction was sufficient to present the law fairly and accurately. We overrule this assignment of error.
No error.
Judges TIMMONS-GOODSON and STEELMAN concur.
Report per Rule 30(e).