STATE OF NORTH CAROLINA v. ROCKY LEE DEWALT

No. COA07-196

(Filed 6 May 2008)

**1. Appeal and Error; Confessions and Incriminating Statements— preservation of issues—Miranda warnings— failure to argue at trial—waiver**

The trial court did not err in a multiple drug offenses and communicating threats case by denying defendant's motion to suppress incriminating statements obtained by the State even though defendant contends he was not given each of the four warnings required by Miranda because: (1) the trial court was presented with sufficient evidence including testimony from the pertinent detective and a lieutenant that the detective gave defendant Miranda warnings before questioning him; (2) although defendant initially asserted at trial that he was not informed of his Miranda rights prior to being questioned by a detective, he now argues a different rationale on appeal than he did at trial regarding the adequacy of the warnings; (3) even alleged errors arising under the United States Constitution are waived if defendant does not raise them at trial; and (4) defendant did not allege the trial court committed plain error.

**2. Confessions and Incriminating Statements— custodial interrogation—knowing and voluntary waiver of rights**

The trial court did not err in a multiple drug offenses and communicating threats case as a matter of law by admitting inculpatory statements defendant made to a detective, and any error present in the court's conclusion that defendant was not in custody was harmless beyond a reasonable doubt, because there was sufficient evidence that defendant was informed of his constitutional rights in accordance with Miranda prior to questioning and that defendant subsequently provided a knowing and voluntary waiver of those rights.

Appeal by defendant from judgments entered 23 August 2006 by Judge John O. Craig, III, in Yadkin County Superior Court. Heard in the Court of Appeals 29 October 2007.

STATE v. DEWALT

[190 N.C. App. 158 (2008)]

*Attorney General Roy Cooper, by Assistant Attorney General Meredith Jo Alcoke, for the State.*

*Glenn, Mills & Fisher, P.A., by Carlos E. Mahoney, for defendant appellant.*

McCULLOUGH, Judge.

Defendant appeals from judgments entered after a jury verdict of guilty of trafficking in cocaine by possession; possession with intent to manufacture, sell, or deliver cocaine; possession of marijuana less than one-half ounce; and two counts of communicating threats. We determine there was no prejudicial error.

## FACTS

While on patrol on 10 January 2006, North Carolina State Trooper Eddie Michael Stone observed a white Jeep Cherokee swerve over the center line while driving south on U.S. 421. Trooper Stone then pulled the vehicle over and issued a warning citation to the driver, Rita Ashburn. The other passengers in the Jeep were J.T. Harris, Kenny Thompson, Rocky Dewalt ("defendant"), and defendant's two-year-old child. Trooper Stone subsequently contacted Detective Eric Ronald Ball with the Yadkin County Sheriff's Office, who arrived approximately five minutes later. Lieutenant Richard Nixon arrived shortly thereafter.

Upon arrival, Detective Ball instructed defendant to exit the vehicle and searched him for weapons. As defendant exited the vehicle, Detective Ball observed a small popcorn bag on the floor of the vehicle between defendant's feet. Inside of the popcorn bag was a second bag containing marijuana and 46.8 grams of crack cocaine.

After discovering the controlled substances, Detective Ball handcuffed defendant and put him in the backseat of Lieutenant Nixon's patrol car. Detective Ball then finished his search of the vehicle. When he completed his search, Detective Ball returned to the patrol car, told defendant he was under arrest, and informed defendant of his *Miranda* rights. Detective Ball then asked defendant who owned the drugs found in the vehicle. In response, defendant stated that all of the "dope" belonged to him. Detective Ball then transported defendant to the sheriff's office. During the proceedings that followed, defendant threatened the lives of both Trooper Stone and Detective Ball.

**STATE v. DEWALT**

[190 N.C. App. 158 (2008)]

On 23 August 2006, defendant was convicted of trafficking in cocaine by possession, possession with intent to manufacture, sell or deliver cocaine, possession of marijuana less than one-half ounce, and two counts of communicating threats by a jury in Yadkin County Superior Court before Judge John O. Craig, III. Defendant gave notice of appeal on 23 August 2006.

I.

Defendant argues the trial court erred by denying defendant's motion to suppress incriminating statements obtained by the State. We disagree.

In reviewing a trial court's ruling on a motion to suppress, the trial court's findings of fact are conclusive if supported by competent evidence. *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001). However, determinations by the trial court of whether a custodial interrogation was conducted, whether defendant made inculpatory statements voluntarily in response to such interrogation, and whether such statements are admissible at trial are conclusions of law, and thus fully reviewable on appeal. *State v. Smith*, 180 N.C. App. 86, 97, 636 S.E.2d 267, 274 (2006); *Buchanan*, 353 N.C. at 336, 543 S.E.2d at 826. " '[T]he trial court's conclusions of law must be legally correct, reflecting a correct application of applicable legal principles to the facts found.' " *State v. Golphin*, 352 N.C. 364, 409, 533 S.E.2d 168, 201 (2000) (quoting *State v. Fernandez*, 346 N.C. 1, 11, 484 S.E.2d 350, 357 (1997)), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001).

A custodial interrogation refers to "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706 (1966); *see State v. Young*, 186 N.C. App. 343, 347, 651 S.E.2d 576, 579-80 (2007). "For Fifth Amendment purposes, included within the meaning of 'questioning' are any actions that police 'should know are reasonably likely to elicit an incriminating response from a suspect.' " *State v. Morrell*, 108 N.C. App. 465, 470, 424 S.E.2d 147, 150, *appeal dismissed, cert. denied, disc. review denied*, 333 N.C. 465, 427 S.E.2d 626 (1993) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 64 L. Ed. 2d 297, 308 (1980)). In a criminal trial, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege

against self-incrimination" provided by the Fifth Amendment to the United States Constitution. *Miranda*, 384 U.S. at 444, 16 L. Ed. 2d at 706. Before a defendant is questioned, and absent the implementation of other fully effective means,

> [h]e must be warned . . . that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation.

*Id.* at 479, 16 L. Ed. 2d at 726. Following these warnings, the suspect may waive effectuation of his rights, so long as the waiver is made "voluntarily, knowingly and intelligently." *Id.* at 444, 16 L. Ed. 2d at 707. If law enforcement officers fail to advise a suspect of his rights, any statements made by the suspect in response to custodial interrogation will be deemed inadmissible. *Morrell*, 108 N.C. App. at 470, 424 S.E.2d at 151.

In the case *sub judice*, defendant was arrested after Detective Ball found drugs in a bag near defendant's feet. After being frisked and handcuffed, defendant was placed in a patrol car while the police continued to search for drugs. Once the search was completed, Detective Ball arrested defendant and asked him to identify the owner of the drugs. In response, defendant informed Detective Ball that the drugs belonged to him. At trial, defense counsel objected to the introduction of defendant's inculpatory statements and moved that they be suppressed. In his motion, defendant asserted that he was not informed of his rights, in accordance with *Miranda v. Arizona*, prior to being questioned by Detective Ball. As this questioning amounted to custodial interrogation, defendant argued his inculpatory responses were inadmissible under *Miranda* and should be suppressed.

Before ruling on defendant's motion, the trial court conducted a hearing outside of the presence of the jury to determine whether defendant's inculpatory statements were admissible. During this hearing, Detective Ball testified that, after he finished searching the Jeep for drugs, he returned to the patrol car and read defendant his *Miranda* rights. Detective Ball's testimony was supported by Lieutenant Nixon, who testified he clearly heard Detective Ball inform defendant of his *Miranda* rights. According to Detective Ball's testimony, after receiving the *Miranda* warnings, defendant indicated

that he did not want a lawyer. Detective Ball then began to question him. When asked to whom the drugs belonged, defendant responded that all of the drugs belonged to him. Detective Ball further testified that he was unable to obtain a written waiver from defendant because he did not carry the waivers with him on patrol. After considering the evidence, the trial court denied defendant's motion to suppress, holding:

> So I will hereby find, based upon—well, let me first note that although the defendant did not testify in the voir dire hearing, he did submit a sworn affidavit which the Court has considered in this matter in which he states that on January the 10th, 2006, he was placed in custody by the sheriff's department without first being advised of his constitutional rights, was interrogated by Deputy Ball and gave certain statements which may tend to incriminate him in the charges. The Court finds that based upon the testimony of Detective Ball and of Lieutenant Nixon that the defendant was, in fact, handcuffed and therefore was in custody and that based upon the statements of these two individuals and their testimony he was read his Miranda rights.

> And the Court, based upon the experience of these sheriff's deputies, will find that when they say he was Mirandized, the Court finds that he was fully Mirandized and advised of his right to remain silent and his right to have an attorney present when he is questioned or when he makes any sort of statement.

> The Court also finds that it was not an interrogation as might come under the normal definition or construction of that word. It was more of a question asked. It was not like he was—the term interrogation usually implies a lengthy series of questions and that does not appear to be the case here.

> Also it appears he was just asked one question or maybe another question. The Court will note that it is reasonable to believe the testimony of these two deputies who say that they do not routinely carry the Miranda waiver forms with them in their patrol cars but that it is normally done back in a police interview room and that is when the waiver forms are normally done and that when they are out in the field it is their practice to Mirandize defendants orally.

> The Court finally notes that based upon the testimony of Detective Ball that they were unable to question the defendant

any further or have him sign a Miranda waiver form because of his acting out and being obstreperous and disruptive at the magistrate's office and in addition just his general demeanor was such that they had to go ahead and place him in detention, in the detention facility before they had a chance to conduct any sort of interview like they might normally do in such a situation.

So based upon those findings of fact, I believe that the Miranda rights were properly done and that under the circumstances the alleged inculpatory statement made by the defendant to Detective Ball will be allowed.

In further support of the denial of defendant's motion, the trial court later added: "[B]ased upon my consideration of the testimony and of the evidence that I am concluding that the defendant's statement was made after a knowing and voluntary waiver of his rights that were read to him."

## A.

[1] On appeal, defendant first argues the trial court incorrectly determined that he was advised of his constitutional rights in compliance with *Miranda v. Arizona.* According to defendant, the prosecution failed to present sufficient evidence that Detective Ball provided defendant with each of the four warnings required by *Miranda.* Therefore, defendant asserts his inculpatory statements, in response to Detective Ball's questioning, were inadmissible at trial. Although defendant argued at trial that these statements were inadmissible, his current argument relies on a different rationale than the argument advanced at trial. Before the trial court, defendant objected to the introduction of the inculpatory statements on the grounds that he had not been advised of his *Miranda* rights prior to interrogation. The trial court subsequently held a hearing, outside the presence of the jury, to determine whether the arresting officers had informed defendant of these rights. As defendant asserted that no *Miranda* warnings were provided, the trial court focused its inquiry on determining whether the officers informed defendant of his *Miranda* rights before they questioned him. During this hearing, the trial court was presented with testimony from two officers confirming that the *Miranda* warnings had been given prior to the questioning. Detective Ball, the arresting officer, testified that he "read him his *Miranda* rights." Further testimony, provided by Lieutenant Nixon, confirmed that Detective Ball had advised defendant of his rights prior to questioning. When asked by the prosecutor if these warnings included "basically that he has a right to remain silent, that he can

have an attorney if he wanted to, so on and so forth[?]" Lieutenant Dixon responded in the affirmative. Thus, the trial court was presented with sufficient evidence to support a conclusion that defendant had received *Miranda* warnings before being questioned by Detective Ball.

In defendant's argument on appeal, he no longer contends that no *Miranda* warnings were provided. Rather, defendant objects to the introduction of the inculpatory statements on the grounds that the prosecution presented insufficient evidence that Detective Ball provided each of the four warnings required by *Miranda*. Thus, defendant's argument on appeal challenges the adequacy of these warnings, not their existence. While clear testimony as to the presence of each of the four *Miranda* warnings is preferred, a review of the record reveals defendant did not preserve this issue for appellate review. "In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(b)(1) (2008). "Even alleged errors arising under the Constitution of the United States are waived if defendant does not raise them in the trial court." *State v. Jaynes,* 342 N.C. 249, 263, 464 S.E.2d 448, 457 (1995), *cert. denied,* 518 U.S. 1024, 135 L. Ed. 2d 1080 (1996). In addition, as defendant has not alleged the trial court committed plain error, he has waived this argument. *See* N.C. R. App. P. 10(c)(4) (2008). Therefore, defendant's assignment of error is dismissed.

### B.

[2] Defendant also argues that the trial court erred as a matter of law in concluding that defendant was not subject to interrogation while in police custody. Accordingly, defendant contends the trial court incorrectly admitted defendant's inculpatory statements.

Upon a review of the record, we find defendant was correct in his assertion that the questioning performed by Detective Ball amounted to custodial interrogation. In determining the admissibility of defendant's inculpatory statements, the trial court stated that the questioning performed by Detective Ball "was not an interrogation as might come under the normal definition or construction of that word." Although this statement does not expressly indicate that no interrogation was conducted for the purposes of a *Miranda* analysis, the statement is not helpful and mischaracterizes the appropriate legal

standard to be applied. Nevertheless, as previously discussed, the trial court was presented with sufficient evidence to support its conclusions that defendant was informed of his constitutional rights, in accordance with *Miranda*, prior to questioning and that defendant subsequently provided a knowing and voluntary waiver of those rights. Thus, the record contained sufficient evidence to support the trial court's determination that the inculpatory statements made by defendant were admissible at trial. On review, the question before this Court is "whether the ruling of the court below was correct, and not whether the reason given therefor is sound or tenable." *State v. Blackwell*, 246 N.C. 642, 644, 99 S.E.2d 867, 869 (1957). "[A] correct decision of a lower court will not be disturbed because a wrong or insufficient or superfluous reason is assigned." *Id.* In this instance, the trial court properly determined that defendant waived his rights, and that the inculpatory statements stemming from Detective Ball's questioning were admissible. Therefore, we hold that the trial court did not err in admitting the inculpatory statements, and that any error present in the court's conclusion that defendant was not in custody was harmless beyond a reasonable doubt. *See* N.C. Gen. Stat. § 15A-1443 (2007).

Defendant has failed to show his inculpatory statements, made in response to Detective Ball's questioning, were inadmissible at trial. We therefore hold the trial court did not err in denying defendant's motion to suppress these statements.

No prejudicial error.

Chief Judge MARTIN and Judge ELMORE concur.